**In re FUTURA INDUSTRIES, INC. Debtor.**

**U.I.U. HEALTH AND WELFARE FUND BY John H. SEREMBUS, Chairman and Trustee Ad Litem and U.I.U. Pension Trust by John H. Serembus, Chairman and Trustee Ad Litem Plaintiffs,**

v.

**Alan LEVIT, President and Don Di Mascio, Jr., Vice President Defendants.**

**Bankruptcy No. 86–02470G.**
**Adv. No. 86–1298G.**

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 6, 1987.

As Amended Feb. 9, and Feb. 13, 1987.

Lawrence J. Tabas, Philadelphia, Pa. for debtor, Futura Industries, Inc.

T. Michael Poxon, Philadelphia, Pa. for plaintiff, U.I.U. Health and Welfare Fund, et al.

Alan L. Butkovitz, Charen and Goldberg, Philadelphia, Pa., for defendant, Alan Levit.

Nicholas Tanarella, Philadelphia, Pa., for the defendant, Don Di Mascio, Jr.

## OPINION

BRUCE FOX, Bankruptcy Judge:

Before me in this adversary proceeding is plaintiffs' motion to abstain, pursuant to 28 U.S.C. § 1334(c)(2), from a proceeding removed from the Philadelphia Court of Common Pleas. For the reasons set forth below, I will recommend to the district court that this matter be transferred back to state court for resolution.

### I.

On February 21, 1986, John H. Serembus, acting on behalf of The Upholsterers' International Union (UIU) Health and Welfare Fund and the UIU Pension Trust, brought suit against Futura Industries, Inc. (Futura), Alan Levit (President of Futura), and Don DiMascio, Jr. (Vice President of Futura). Suit was filed in federal district court and plaintiffs alleged that the defendants failed to make contributions to both the Fund and the Trust in violation of the terms of a collective bargaining agreement. Damages were sought against Futura based upon 29 U.S.C. § 1145 and damages were sought against the corporate officers pursuant to the Pennsylvania

Wage Payment and Collection Law, 43 P.S. §§ 260.1—*et seq.* (PWPCL).

On May 16, 1986, Futura filed a voluntary chapter 11 bankruptcy petition. The Fund and the Trust then sought relief from the automatic stay, pursuant to 11 U.S.C. § 362(d), in order to continue their lawsuit against the corporate officers only. After a hearing, Chief Judge Goldhaber entered an order dated August 14, 1986, granting relief from the stay. No appeal from this order was taken.

Under the terms of this court's order,[1] the plaintiffs had the option of either continuing their lawsuit against the individual defendants in federal court or initiating an action in state court. Plaintiffs then decided to dismiss the federal lawsuit against the individuals only and, on October 2, 1986, brought an action for damages against Levit and DeMascio based solely on the alleged violation of the PWPCL.

Defendants, within the time permitted by Bankr.Rule 9027(a)(3) then filed an application for removal of the state court action pursuant to 28 U.S.C. § 1452.[2] Plaintiffs then countered this procedural tactic by filing a motion with this court for mandatory abstention under 28 U.S.C. § 1334(c)(2). Throughout this maneuvering, the district court lawsuit against the debtor has been stayed due to the pendency of the corporate chapter 11 filing.

The underlying issue raised by this motion is simply in which forum will the Fund and the Trust be permitted to proceed against the individual corporate officers.

There are only three possibilities—district court, bankruptcy court, and state court—and the proceeding has already paid a visit to each possible forum. This issue, although simply stated, is not so easily answered, for it requires a brief foray into both the jurisdictional thicket surrounding bankruptcy courts as well as the substantive law thicket surrounding the Employee Retirement Income Security Act of 1974 (ERISA).

## II.

Prior to 1984, the abstention doctrine regarding bankruptcy proceedings was found in 28 U.S.C. § 1471(d).[3] After the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), Congress repealed section 1471 and enacted The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353 (1984) (BAFJA). Under BAFJA, the concept of abstention was expanded as part of the Congressional compromise over the appropriate jurisdictional scope to be accorded bankruptcy courts. Section 1471(d) was essentially recodified as 28 U.S.C. § 1334(c)(1), and this provision gives bankruptcy courts the discretion to abstain in appropriate circumstances. However, section 1334(c)(2) is new and mandates abstention in limited circumstances. As such, this provision represents a Congressional determination as to which non-core or "related" bankruptcy proceedings must be decided in a state court forum. *See* Remarks

---

1. The order granted relief to the following extent:
 "(1) service may be made on defendants;
 (2) acknowledgment of receipt of service shall be filed by defendants in the civil action;
 (3) plaintiffs may, if they so desire, file suit in State court against the corporate officers in their individual capacities to assert claims inter, alia, under the Pennsylvania Wage Payment and Collection Law;
 (4) plaintiffs may proceed with their Federal court action against the corporate officers individually or may pursue their remedies in State court unimpeded by this court."

2. The current removal statute, 28 U.S.C. § 1452, refers to removal of state court actions to the

district court. Defendants' removal application, filed in state court, does refer to removal to district court, but the application was filed in bankruptcy court.

3. 11 U.S.C. § 305 grants to bankruptcy courts the authority to suspend or dismiss entire cases as opposed to a proceeding in a case. Its purpose is to encourage out of court workouts between the debtor and its creditors. *See* Reed, Sagar & Granoff, *Subject Matter Jurisdiction, Abstention and Removal Under the New Federal Bankruptcy Law,* 56 Am.Bankr.L.J. 121, 141 (1982). Section 305 has not been raised by either party and is not relevant to this proceeding.

of Senator Dole, 130 Cong.Rec. S8890 (daily ed. June 29, 1980), *reprinted in* 1984 U.S. Code Cong. & Adv. News 576, 587.

■ The plaintiffs in the instant proceeding argue that the provisions of section 1334(c)(2) are met and that abstention is mandated. In order for mandatory abstention to apply, the plaintiffs must show that

(1) a timely motion is made; (2) the proceeding is based upon a state law claim or state law cause of action; (3) the proceeding is related to a case under Title 11; (4) the proceeding does not arise under Title 11; (5) the action could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334; and (6) an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.

*In re Arnold Print Works*, 54 B.R. 562, 569 (Bankr.D.Mass.1985); *accord, Matter of Boughton*, 60 B.R. 373 (N.D.Ill.1986); *In re Counts*, 54 B.R. 730 (Bankr.D.Colo. 1985).

I doubt whether plaintiffs, who presented no evidence at the hearing held on this motion, have sustained their burden in this matter. For example, plaintiffs make no showing that the state court proceeding, which was just filed, could be timely adjudicated. *See In re Double TRL, Inc.*, 65 B.R. 993, 1002 n. 10 (Bankr.E.D.N.Y.1986); *In re Burgess*, 51 B.R. 300, 302 (Bankr.S.D. Ohio 1985) ("Apart, however, from a naked assertion that the matter can be timely adjudicated in the state court, no specific showing is offered by defendant to substantiate this assertion.").

While I would be reluctant, on this record, to agree with plaintiffs that abstention is mandated,[4] I agree with plaintiffs for a variety of reasons that this proceeding falls within the narrow sphere that should be decided in a state court forum in accordance with 28 U.S.C. § 1334(c)(1) and 28 U.S.C. § 1452(b).

4. If the matter could be timely adjudicated however, a proceeding which does not involve the debtor as a party might be subject to mandatory abstention. *Pacor, Inc. v. Higgins*, 743 F.2d 984,

■ First, most of the criteria that Congress established for mandatory abstention have been met here. When that occurs, bankruptcy courts should give careful consideration whether it would be appropriate to exercise their discretion to abstain under §. 1334(c)(1). *See In re Illinois-California Express, Inc.*, 50 B.R. 232, 241 (Bankr.D. Colo.1985).

Second, it is not clear from this record that defendants had the right to seek removal of the state court lawsuit to bankruptcy court. Although not raised by either party, this proceeding may not be "related" to the Futura bankruptcy since the lawsuit does not involve the debtor either as a party plaintiff or defendant.

In *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir.1984), the Court of Appeals held that a state court lawsuit, to which the debtor was not a party, was not "sufficiently connected" with the debtor's estate to constitute a "related proceeding" under 28 U.S.C. § 1334(b). Since the matter was not related, there was no right to remove the proceeding to bankruptcy court. *Id.* at 994, 996; *accord, In re Bobroff*, 766 F.2d 797 (3d Cir.1985). In *Pacor*, the court defined this outermost jurisdictional parameter in this fashion:

The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. . . .* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

On the other hand, the mere fact that there may be common issues of fact be-

996 n. 16 (3d Cir.1984); *State Bank of Lombard v. Chart House, Inc.*, 46 B.R. 468, 472 (N.D.Ill. 1985).

tween a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1471(b). Judicial economy itself does not justify federal jurisdiction.

743 F.2d at 994 (citations omitted).

While the Court of Appeals concluded in *Pacor* that there was an insufficient connection between the state court lawsuit and the Manville bankruptcy to afford jurisdiction, it did note that there may be circumstances, such as the existence of an indemnification agreement, which could cause a third party lawsuit to have an effect upon the debtor's estate. *Id.* at 995. In fact, much of defendants' memorandum here argues that the lawsuit against debtor's officers affects its chances of reorganization.[5]

I agree with defendants that a lawsuit against corporate officers may be related to the corporation's bankruptcy. *E.g., A.H. Robins Co. v. Piccinin,* 788 F.2d 994 (4th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *In re Johns-Manville,* 26 B.R. 420 (Bankr.S.D.N.Y. 1983), *aff'd,* 40 B.R. 219 (S.D.N.Y.1984). For example, there may be an express indemnification agreement between the corporation and its officers. Perhaps payment by the officers of a state court judgment would deprive the corporation of funds earmarked for the plan of reorganization. *See In re Otero Mills,* 21 B.R. 777 (Bankr.D.N. M.), *aff'd,* 25 B.R. 1018 (D.N.M.1982). However, there was no evidence presented on this issue, and I am unwilling to accept the defendants' implicit argument that every state court providing against corporate officers will *per se,* affect the corporate reorganization. *See, e.g., In re Diaconx,* 69 B.R. 343 (Bankr.E.D.Pa.1987), *appeal docketed* (E.D.Pa.) (suit against officer and majority shareholder would not affect reorganization); *In re Keyco, Inc.,* 49 B.R. 507 (Bankr.E.D.N.Y.1985) (same). Thus, I have

doubts whether this court has jurisdiction in this matter. *See Pacor, Inc. v. Higgins.*

Even if I were to conclude that the instant proceeding is related to the Futura bankruptcy, "[t]he degree to which the related proceeding is related to the bankruptcy case, as a practical matter, will doubtless be an important factor in the decision whether to abstain" under section 1334(c)(1). *In re Salem Mortgage Co.,* 783 F.2d 626, 635 (6th Cir.1986). The limited connection, if any, between the Futura bankruptcy and the lawsuit againt Levit and DiMascio is a significant factor in my decision that this proceeding should be referred to state court.

The third significant factor is the earlier determination to grant plaintiffs relief from the automatic stay and to allow them to proceed in state court. In such an instance, one court has concluded, and I agree, that the "interests of justice" may warrant abstention under section 1334(c)(1).

> When the bankruptcy court granted Farmers Bank relief from the automatic stay, that court essentially determined that the state law claim should more appropriately be brought in state court. This court agrees. More importantly, this court will not be a party to debtors' tactics which effectively circumvent the bankruptcy court's order granting Farmers Bank relief from the automatic stay and authorizing the bank to pursue its state law remedies.

*In re Borchardt,* 56 B.R. 791, 794 (D.Minn.), *aff'd,* 803 F.2d 948 (8th Cir.1986).

### III.

■ Given the limited connection between this state court proceeding and Futura's bankruptcy, plus the earlier decision under § 362(d) as well as recognition of the Congressional concerns embodied in § 1334(c), I conclude that this bankruptcy

---

5. Unfortunately, defendants confuse the question of bankruptcy court jurisdiction under section 1334(b) with the power of the court to enjoin state proceedings under 11 U.S.C. § 105(a). *See In re Monroe Well Service, Inc.,* 67 B.R. 746 (Bankr.E.D.Pa.1986), *appeal docketed* (E.D.Pa.); *In re Otero Mills,* 21 B.R. 777

(Bankr.D.N.M.), *aff'd,* 25 B.R. 1018 (D.N.M. 1982).

> While a court has power to enjoin a proceeding which is related to a bankruptcy case, the issues under § 105(a) go beyond the question of nexus.

court should abstain from deciding the adversary proceeding. I am similarly convinced that these factors also provide the "equitable grounds" to remand the removed proceeding to state court by virtue of 28 U.S.C. § 1452(b). *See In re Osage Exploration Co.*, 39 B.R. 966 (Bankr.S.D. N.Y.1984)[6]

My conclusion comports with the Supreme Court's recent decision in *Franchise Tax Board v. Laborer's Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). In *Franchise Tax Board*, the Supreme Court held that a defendant had no right to remove a state court proceeding to federal district court although the defendant asserted that the state cause of action had to be dismissed due to federal preemption under ERISA.

■ In this case, the district court lawsuit against Futura is jurisdictionally based, in part, upon section 301 of The Labor Management Relations Act (LMRA), 29 U.S.C. § 185. That statute "authorizes suits for the violation of a contract between an *employer* and a labor organization representing employees in an industry affecting commerce." *Combs v. Indyk*, 554 F.Supp. 573, 574 (W.D.Pa.1982) (emphasis added). Unless there is a basis for piercing the corporate veil, however, a section 301 claim can be raised only against the corporate employer, not the individual corporate officer. *Id.* In this proceeding, neither the Fund or the Trust have based any claim against the individuals upon section 301. The claim is based solely on the PWCPL.

Plaintiffs' notion that the corporate officers may be held liable under the PWCPL is certainly supported by the Third Circuit's decision in *Carpenter Health and Welfare*

*Fund v. Ken. R. Ambrose, Inc.*, 727 F.2d 279 (3d Cir.1983). *Ambrose* also cited the *Combs* holding approvingly concerning the limits of individual officer liability under LMRA. However, in *McMahon v. McDowell*, 794 F.2d 100 (3d Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986), the Third Circuit overruled its earlier holding in *Ambrose* and concluded that a suit under the PWPCL is preempted by ERISA and thus the state claim against the individual officers must be dismissed. *Id.* at 107–108.

■ While plaintiffs' claim against defendants under the PWPCL implicates federal concerns and indeed federal law may provide a defense to this claim, defendants still have no right to have this defense heard in a federal forum. *See Franchise Tax Board v. Laborers Vacation Trust.* In other words, in the instant proceeding, absent Futura's bankruptcy filing, this state court lawsuit could not have been removed to federal court. Similarly, for the reasons previously stated, I do not believe the corporate bankruptcy filing should alter that result.

## IV.

The last issue concerns the scope of my authority under 28 U.S.C. §§ 1334(c)(1) and 1452(b). Section 1452(b) states that a decision to remand for equitable reasons is not reviewable and a decision to abstain under § 1334(c)(1) may also be nonreviewable. *See* 1 Collier on Bankruptcy ¶ 3.01[3][a], at 3–58 (15th ed. 1986) (Collier). Bankruptcy courts have divided on the question whether a final decision as opposed to a recommendation may be entered in a related proceeding concerning a nonreviewable matter. *Compare, e.g., In re Baumgartner*, 57 B.R. 517, 520–21 (Bankr.N.D.Ohio 1986)

---

**6.** Defendants rely heavily upon the decision *In re U.S. Air Duct Corp.*, 8 B.R. 848 (Bankr.N.D.N. Y.1981) in opposing plaintiffs' motion. However, the decision precedes *Marathon* and BAFJA, and so has jurisdictional notions which are no longer viable and also fails to consider the Congressional intent surrounding § 1334(c). It is also distinguishable in two other ways. First, the court in *Air Duct* feared that a remand would cause duplicative litigation. However, in

this instance, given the existence of the pending district court action against Futura, there will be no greater duplication if the proceeding against its officers takes place in state court rather than bankruptcy court. Second, the claims in *Air Duct* against the corporation and its officers were identical. Here, the claims against Futura are based upon federal law and the claims against the individuals are based upon state law.

(bankruptcy court may issue final orders concerning abstention) *with In re Cemetery Development Corp.*, 59 B.R. 115 (Bankr.M.D.La.1986) (bankruptcy court can only issue recommendations to the district court concerning abstention decisions).

■ It appears to me inappropriate to enter a binding decision in a "related" proceeding which may not be reviewable. *See In re Corporacion de Servicios Medicos Hospitalorios de Farjardo*, 805 F.2d 440, 443 (1st Cir.1986); 1 Collier ¶ 3.01[3][a], [5][g], at 3–59, 3–81. In this particular proceeding, given the extensive maneuvering that has already occurred over the issue of the appropriate forum, I am not pleased to add an additional layer to this litigation. However, the Supreme Court has determined that there are constitutional limits to the authority that Congress can delegate to Article I bankruptcy courts when considering proceedings only related to bankruptcy cases. *See Thomas v. Union Carbide Agricultural Products Co.* 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985). Those limits which exist when a decision on the merits is made should also exist when a determination is made that the adversary proceeding is more properly to be resolved in a state forum. *See Matter of First Landmark Development Corp.*, 51 B.R. 25 (Bankr.M.D.Fla.1985).

Therefore, I shall recommend to the district court that this matter be remanded back to the state court pursuant to 28 U.S.C. § 1452(b) and 28 U.S.C. § 1334(c)(1).